1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ANDERSON LAW** PLLC
48 NORTH MACDONALD
MESA, ARIZONA  85201
TELEPHONE (480) 272-5983
adam@acandersonlaw.com


Adam C. Anderson/024314
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

## PHOENIX DIVISION

| | |
|---|---|
| **Stephanie Vallejos,** | |
| **Plaintiff,** | **COMPLAINT & TRIAL** |
| **v.** | **BY JURY DEMAND** |
| **Thunderbird Collection Specialists, Inc.,** | |
| **Defendant.** | |

NOW COMES the Plaintiff, Stephanie Vallejos, by and through her attorneys, Anderson Law PLLC, and for her complaint against the Defendant, Thunderbird Collection Specialists, Inc., Plaintiff states as follows:

### I.    PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.    JURISDICTION & VENUE

2.    Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.    PARTIES

4.     STEPHANIE VALLEJOS, (hereinafter, "Plaintiff") is an individual residing in the City of Albuquerque, County of Berrallio, State of New Mexico.

5.     The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Grandes Cortes Apartments (hereinafter, "GCA").

6.     The debt that Plaintiff allegedly owed CGA was for rent and/or fees relative to Plaintiff's residential apartment.

7.     CGA is located in the City of Tempe, County of Maricopa, State of Arizona.

8.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9.     THUNDERBIRD COLLECTION SPECIALISTS, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of New Mexico.  Defendant is incorporated in the State of Arizona.

10.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

# IV.   ALLEGATIONS

15.     In 2008 through 2010, and on multiple occasions therein, Defendant communicated with Plaintiff in an attempt to collect a debt she allegedly owed to GCA.

16.     During the aforesaid time period, Defendant sent multiple letters to Plaintiff in an attempt to collect a debt she allegedly owed.

17.     Prior to 2011, Defendant was cognizant of an address at which it could communicate with Plaintiff.

18.     In 2008 through 2010, on multiple occasions therein, Plaintiff initiated telephone calls to Defendant and left Defendant multiple voicemail messages requesting that Defendant contact Plaintiff so that she could pay the debt on which Defendant was attempting to collect.

19.     During the aforesaid time period, the aforesaid numerous voicemail messages left by Plaintiff for Defendant went unreturned.

20.     Then, in or around November 2011, and on multiple occasions therein, Defendant began initiating telephone calls to Plaintiff in an attempt to collect the debt she allegedly owed to GCA.

21.     In or around November 2011, Defendant initiated multiple telephone calls to Plaintiff at her residence.

22.     During the aforesaid time period, Plaintiff was living at her parent's residence.

23.     During the aforesaid time period, Defendant left multiple voicemail messages on the answering machine at Plaintiff's parent's residence.

24.     On multiple occasions, during the course of the aforesaid voicemail messages, Defendant's duly authorized representative stated that she was contacting Plaintiff regarding an important matter.

25.     Defendant's duly authorized representative then provided Plaintiff with a telephone number at which Plaintiff was to contact Defendant's duly authorized representative.

26.     On multiple occasions, during the course of the aforesaid voicemail messages, Defendant's duly authorized representative did not provide Plaintiff with information relative to Defendant's identity.

27.     On multiple occasions, during the course of the aforesaid voicemail messages, Defendant did not inform Plaintiff that it was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

28.     In or around November 2011, Defendant initiated a telephone call to Plaintiff's residence and Defendant's duly authorized representative engaged in a telephone conversation with Plaintiff's mother.

29.     During the course of the aforesaid telephone conversation between Plaintiff's mother and Defendant, Defendant stated that it was calling for Plaintiff.

30.     Defendant's duly authorized representative further stated the name of the company from which she was calling.

31.     Defendant's duly authorized representative further informed Plaintiff's mother that Defendant was calling for Plaintiff because Plaintiff owed a debt.

32.     Plaintiff's mother informed Plaintiff of the contents of the aforesaid telephone conversation.

33.     Plaintiff did not consent to Defendant communicating with third-parties.

34.     As of November 2011, Defendant was cognizant of the aforesaid telephone number at which it could reach Plaintiff.

35.     In or around November 2011, Defendant also initiated telephone calls to Plaintiff's cellular telephone number in a further attempt to collect the debt she allegedly owed.

36.     On or about November 9, 2011, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt she allegedly owed to CGA.

37.     The aforesaid telephone call was initiated by Defendant to Plaintiff's cellular telephone number.

38.    Defendant then left a voicemail message for Plaintiff wherein Defendant stated it was urgent that Plaintiff return the telephone call.

39.    Defendant then left a telephone number at which Plaintiff could reach Defendant.

40.    At no time during the course of the aforesaid voicemail message did Defendant's duly authorized representative provided Plaintiff with information relative to Defendant's  identity.

41.    At no time during the course of the aforesaid voicemail message did Defendant's duly authorized representative inform Plaintiff that Defendant was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

42.     Plaintiff only ascertained that the aforesaid voicemail message was left by Defendant when she initiated a telephone call to the telephone number that was left for her during the voicemail message and determined said telephone number was that of Defendants.

43.    On or about November 9, 2011, subsequent to Plaintiff having received the aforesaid voicemail message from Defendant, Plaintiff initiated a telephone call to the telephone number that was left on the aforesaid voicemail message and Plaintiff engaged in a telephone conversation with Defendant.

44.    During the course of the aforesaid telephone call between Plaintiff and Defendant, Plaintiff apprised Defendant that the telephone number it called, on or about November 9, 2011, when it left her the aforesaid voicemail message, was the telephone number Plaintiff used for her work.

45.    Plaintiff then requested that Defendant not call the aforesaid telephone number because she used it for work.

46.    Plaintiff further advised Defendant that it was inconvenient for her to receive calls at the aforesaid telephone number because she used it for work.

47.     Plaintiff further specifically told Defendant that her employer prohibited her from receiving telephone calls, such as those from Defendant, while she was working.

48.     During Plaintiff's telephone conversation with Defendant, Defendant told Plaintiff she had to pay the full amount of the debt she owed by the end of the day.

49.     Plaintiff told Defendant that she had been trying to contact Defendant on multiple occasions, over the past years, to pay the debt on which it was attempting to collect.

50.     Defendant responded to Plaintiff's statements by calling Plaintiff "ignorant."

51.     Defendant then told Plaintiff that it was impossible that Plaintiff tried contacting Defendant because someone was always available to answer Defendant's telephone calls.

52.     Plaintiff, again, informed Defendant that she had tried to reach Defendant on multiple occasions.

53.     Defendant then, again, told Plaintiff she was "ignorant."

54.     Plaintiff then informed Defendant that she disputed the debt on which Defendant was attempting to collect.

55.     Defendant then told Plaintiff she was "idiotic."

56.     Defendant further told Plaintiff she must not know how to read since she had putatively signed a document allowing Defendant to collect the amount of the debt she allegedly owed.

57.     Defendant then informed Plaintiff that if she did not pay the debt she owed her wages would be garnished.

58.     Defendant further told Plaintiff that it would garnish her wages because she was a "deadbeat" and she deserved to suffer.

59.     Defendant further told Plaintiff that it was going to contact her employer to have her wages garnished.

60.    At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no lawsuit had been filed against Plaintiff for the debt she allegedly owed.

61.    At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no judgment had been entered against Plaintiff for the debt she allegedly owed.

62.    The debt allegedly owed by Plaintiff is not a debt that can proceed to garnishment without Defendant first having secured a judgment against Plaintiff for the alleged debt.

63.    During the course of the aforesaid telephone call between Plaintiff and Defendant, Defendant then requested that Plaintiff provide information relative to her address.

64.    Defendant asked Plaintiff if she lived in a house.

65.    Plaintiff told Defendant that she lived in her parent's house.

66.    Defendant responded that if she did not pay the debt she owed then Plaintiff's parent's house would be taken away.

67.    Subsequent to Defendant having made the aforesaid statements to Plaintiff, Defendant's duly authorized representative disconnected the telephone call with Plaintiff.

68.    Defendant's threat to take Plaintiff's parent's house, during the aforesaid telephone call, was false, deceptive and/or misleading given that Defendant had neither the power or the authority to do so as Plaintiff's parents were not legally responsible or obligated to pay the debt on which Defendant was attempting to collect

69.    Defendant's threat to take Plaintiff's parent's house, during the aforesaid telephone call, was a threat made by Defendant to Plaintiff in an attempt to coerce Plaintiff into making a payment to Defendant.

70.    Defendant's statements during the aforesaid telephone call with Plaintiff, as delineated above, were neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

71.     The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed CGA.

72.     The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

73.     The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

74.     In or around November 2011, subsequent to Plaintiff's November 9, 2011, telephone conversation with Defendant, Defendant continued to initiate telephone calls to the telephone number Plaintiff used for work in a further attempt to collect the debt Plaintiff allegedly owed

75.     In or around November 2011, Defendant initiated the aforesaid telephone calls to the telephone number that Plaintiff used for work despite Defendant having information in its possession to suggest that Plaintiff's employer prohibited her from receiving telephone calls from Defendant at the aforesaid telephone number while Plaintiff was at work.

76.     In or around November 2011, Defendant initiated the aforesaid telephone calls to the telephone number that Plaintiff used for work despite Defendant being cognizant that Plaintiff's employer prohibited her from receiving telephone calls from Defendant at the aforesaid telephone number while Plaintiff was at work.

77.     In or around November 2011, Defendant initiated the aforesaid telephone calls to the telephone number that Plaintiff used for work despite Defendant being cognizant of an alternative telephone number at which it could reach Plaintiff.

78.     In or around November 2011, Defendant initiated the aforesaid telephone calls to the telephone number that Plaintiff used for work despite Defendant being cognizant of an address at which it could communication with Plaintiff.

79.     In or around November 2011, subsequent to November 9, 2011, Plaintiff retained the assistance of an organization named Care One to help her resolve the debt on which Defendant was attempting to collect from Plaintiff.

80.     Upon information and belief, in or around November 2011, subsequent to November 9, 2011, Care One communicated with Defendant and informed Defendant that Plaintiff wanted to make a payment to Defendant relative to the debt on which it was attempting to collect from Plaintiff.

81.     Upon information and belief, in or around November 2011, subsequent to November 9, 2011, Care One provided a payment to Defendant that was to be used towards the debt on which Defendant was attempting to collect from Plaintiff.

82.     Defendant received the aforesaid payment.

83.     To date, Defendant has not accepted the aforesaid payment and has not applied it towards the debt on which Defendant was attempting to collect from Plaintiff.

84.     Upon information and belief, on or about December 23, 2011, Defendant communicated to Care One that it would not accept the aforesaid payment.

85.     Upon information and belief, on or about December 23, 2011, Defendant communicated to Care One that Defendant would not accept the aforesaid payment because legal matters had been taken against Plaintiff.

86.     On or about December 23, 2011, Care One informed Plaintiff of Defendant's communications with Care One.

87.     Defendant's representations to Plaintiff that legal matters had been taken against Plaintiff, as delineated above, had the effect of conveying to an unsophisticated consumer that Defendant had filed a lawsuit against Plaintiff relative to the debt on which it was attempting to collect.

88.     At the time Defendant made the aforesaid representation to Plaintiff that Defendant had filed a lawsuit against her relative to the debt on which it was attempting to collect, no lawsuit had been filed against Plaintiff relative to the debt she allegedly owed.

89.     Defendant's representation to Plaintiff that a lawsuit had been filed against her relative to the debt on which it was attempting to collect was false, deceptive and/or

misleading given that at the time Defendant made the aforesaid representation no lawsuit had been filed against Plaintiff relative to the debt she allegedly owed.

90.     Defendant's representation to Plaintiff that a lawsuit had been filed against her relative to the debt on which it was attempting to collect misrepresented the character, nature and/or legal status of the debt on which Defendant was attempting to collect given that at the time Defendant made the aforesaid representation no lawsuit had been filed against Plaintiff relative to the debt she allegedly owed.

91.     Defendant has not filed a lawsuit against Plaintiff for the debt she allegedly owes.

92.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no intention of filing a lawsuit against Plaintiff for the debt she allegedly owes.

93.     Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the debt she allegedly owes.

94.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no authority to file a lawsuit against Plaintiff for the debt she allegedly owes.

95.     On or about December 23, 2011, subsequent to Plaintiff having been informed of Defendant's communications with Care One, as delineated above, Plaintiff engaged in a telephone conversation with Defendant.

96.     During the course of the aforesaid telephone call, Defendant, again, informed Plaintiff that she owed a debt to CGA.

97.     During the course of the aforesaid telephone call, Defendant's duly authorized representative used abusive and harassing language when speaking to Plaintiff.

98.     During the course of the aforesaid telephone call, Defendant's duly authorized representative, again, told Plaintiff she was "ignorant."

99.     During the course of the aforesaid telephone call, Plaintiff asked Defendant to inform her of the methods she could use to make a payment to Defendant.

100.     Defendant informed Plaintiff that she could only pay Defendant by providing Defendant with her credit card, debit card or bank account information.

101.     Plaintiff then asked Defendant if she made a payment to Defendant via one of the aforesaid methods if Defendant would be able to provide her with documentation to demonstrate her payment was received and processed.

102.     Defendant informed Plaintiff that it would not be able to provide her with documentation to demonstrate her payments were received and processed.

103.     Defendant informed Plaintiff the only information it could provide to Plaintiff would be an authorization number.

104.     Defendant then, again, informed Plaintiff that if she did not pay the debt she owed then it would garnish her wages.

105.     At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no lawsuit had been filed against Plaintiff for the debt she allegedly owed.

106.     At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no judgment had been entered against Plaintiff for the debt she allegedly owed.

107.     The debt allegedly owed by Plaintiff is not a debt that can proceed to garnishment without Defendant first having secured a judgment against Plaintiff for the alleged debt.

108.     Again, Defendant's statements during the aforesaid telephone call with Plaintiff, as delineated above, were neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

109.     The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed CGA.

110.    The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

111.    The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

112.    In its attempts to collect the debt allegedly owed by Plaintiff to CGA, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a.  Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

    b.  Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

    c.  Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(1);

    d.  Communicated with the consumer at the consumer's place of employment despite knowing or having reason to know that the consumer's employer prohibits the consumer from receiving such communication in violation of 15 U.S.C. §1692c(a)(3);

    e.  Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

f.   Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

g.   Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

h.   Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

i.   Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

j.   Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

k.   Represented or implied that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. §1692e(4);

l.   Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

m.  Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

n.   Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

o.  Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

p.  Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest, if there is no present intention to take possession of the property or if the property is exempt by law from such dispassion or disablement in violation of 15 U.S.C. §1692f(7); and,

q.  Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

113.   As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.   JURY DEMAND

114.   Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, STEPHANIE VALLEJOS, by and through her attorneys, respectfully prays for judgment as follows:

a.   All actual compensatory damages suffered;

b.   Statutory damages of $1,000.00;

c.   Plaintiff's attorneys' fees and costs;

d.   Any other relief deemed appropriate by this Honorable Court.

Respectfully Submitted,

**By:**   s/ Adam C. Anderson

**Adam C. Anderson**

**Attorney for Plaintiff,**

**STEPHANIE VALLEJOS**

1    Dated: May 9, 2012

2

3    Adam C. Anderson
     **ANDERSON LAW** PLLC
4    48 NORTH MACDONALD
5    MESA, ARIZONA  85201
     TELEPHONE (480) 272-5983
6    adam@acandersonlaw.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28